[Civ. No. 14190.   First Dist., Div. Two.   Apr. 4, 1950.]

PEARL BOWDEN, Appellant, v. SPIEGEL, INC. (a Corporation), et al., Respondents.

Arthur DeBeau Carr, Kenneth W. Donelson, Frances M. Newell and Mary Ann Winters for Appellant.

Tinning & DeLap and J. Vance Porlier for Respondents.

DOOLING, J.—Plaintiff appeals from an adverse judgment entered after the sustaining of a general demurrer to her first amended complaint without leave to amend.

The allegations of the first amended complaint may be summarized as follows: Defendant Spiegel, Inc., is a corporation operating retail stores under the name of Federal Stores. Defendant First Doe as agent of the corporate defendant on May 28, 1948, telephoned to the home of one Prator at about 11 p. m., and asked for plaintiff. Prator's daughter, who had answered the telephone, asked if it was an emergency call and First Doe replied that it was. The daughter then walked down the street to plaintiff's home and told plaintiff

that there was an emergency telephone call for plaintiff at the Prator residence. When plaintiff reached the telephone she asked: "What is the matter?" and First Doe replied: "Please bear up. I know this is going to be a shock; it is as much of a shock to me to have to tell you as it will be to you." Plaintiff answered that she could take the message whereupon First Doe stated: "This is the Federal Outfitting Company—why don't you pay your bill?" Plaintiff attempted to explain that she owed nothing and First Doe replied that he was going to take her to court and that would cost her a lot of money— "unless you come into the Federal Store in Pittsburg tomorrow morning at ten, I am going to cause you a lot of trouble." The entire Prator family listened to plaintiff's end of the conversation. Plaintiff did not owe the company any money. First Doe acted as hereinabove set out maliciously and with intent to vex, harass and annoy plaintiff and with no probable cause. As a result plaintiff is sick and ill and will remain so for an indefinite time.

That the above facts, if true, spell out a cause of action we have no doubt. In *Emden* v. *Vitz*, 88 Cal.App.2d 313 [198 P.2d 696], the defendants after locking plaintiff out of her apartment took her to the apartment house office and there used toward her violent and abusive language as a result of which she suffered emotional distress and consequent physical illness for which she was awarded damages. On appeal the defendants argued (88 Cal.App.2d 316) "that there can be no cause of action for personal injuries resulting from fright caused chiefly by spoken words alone." The court, after a review of authorities, stated (88 Cal.App.2d p. 318):

"As these and other cases cited above amply illustrate, the nature of the wrongful conduct which induces physical harm through its effect on the mind and nervous system is generally immaterial. The determination whether or not given conduct is legally wrongful, of course, may involve factual distinctions of importance and substance (compare Rest., Torts, § 312 with *ibid.*, § 313); but once the wrongful quality is established, it matters not whether that conduct consisted of acts alone, or of acts accompanied by words, or of mere spoken words alone, for the legal inquiry in each case is thenceforth confined to the well-established channels of proximate cause and damages."

Section 312, Restatement of Torts, cited in the above quotation, reads:

"If the actor intentionally and unreasonably subjects another to emotional distress which he should recognize as

likely to result in illness or other bodily harm, he is subject to liability to the other for an illness or other bodily harm of which the distress is a legal cause,

"(a) although the actor has no intention of inflicting such harm, and

"(b) irrespective of whether the act is directed against the other or a third person."

The important elements are that the act is intentional, that it is unreasonable, and that the actor should recognize it as likely to result in illness. Given these elements the modern cases recognize that mere words, oral or written, which result in physical injury to another are actionable. (*Grimes* v. *Gates,* 47 Vt. 594 [19 Am.Rep. 129] (threat of imprisonment); *Whitsel* v. *Watts,* 98 Kan. 508 [159 P. 401, L.R.A. 1917A 708] (violent and threatening language); *Johnson* v. *Sampson,* 167 Minn. 203 [208 N.W. 814, 46 A.L.R. 772] (false oral charge by teachers of unchastity of schoolgirl); *Erwin* v. *Milligan,* 188 Ark. 658 [67 S.W.2d 592] (indecent oral proposal to married woman); *Clark* v. *Associated Retail Credit Men,* 105 F.2d 62 [70 App.D.C. 183] (threatening and abusive letters); *Kirby* v. *Jules Chain Stores Corp.,* 210 N.C. 808 [188 S.E. 625] (threatening and abusive language); *Wilson* v. *Wilkins,* 181 Ark. 137 [25 S.W.2d 428] (oral threats of violence); *Barnett* v. *Collection Service Co.,* 214 Iowa 1303 [242 N.W. 25] (written threats and abuse); *Nickerson* v. *Hodges,* 146 La. 735 [84 So. 37, 9 A.L.R. 361] (practical joke causing shame and humiliation with consequent illness); *Malczewski* v. *New Orleans Ry. & Light Co.,* 156 La. 830 [101 So. 213, 35 A.L.R. 553] (offensive and insulting language); *La Salle Extension University* v. *Fogarty,* 126 Neb. 457 [253 N.W. 424, 91 A.L.R. 1491] (threatening letters); *Quina* v. *Roberts* (La.App.), 16 So.2d 558 (disparaging letter to plaintiff's employer); *Wilkinson* v. *Downton* (1897), 2 Q.B. 57 (falsely telling woman her husband seriously injured); *Janvier* v. *Sweeney* (1919), 2 K.B. 316 (false accusation of being a spy); *Bielitski* v. *Obadiak,* 65 Dom.L.R. (Sask.) 62 (false statement that plaintiff's son was suicide); Prosser on Torts, pp. 57-61; 52 Am.Jur. pp. 419-423.)

We entertain no doubt that the intentional use of such an unreasonable method of attempting to collect a debt which proximately results in physical illness is actionable.

The briefs contain much discussion of whether the complaint would support a recovery on the theory of a violation of the

right of privacy. Respondent contends that this tort cannot be committed by oral statements. The historic article on the subject by Brandeis and Warren (4 Harv.L.Rev. 193) suggests this limitation in the absence of special damage (p. 217) and there are dicta in *Melvin* v. *Reid,* 112 Cal.App. 285, 290 [297 P. 91], and *Metter* v. *Los Angeles Examiner,* 35 Cal. App.2d 304, 310 [95 P.2d 491], which state the rule baldly without including the exception for the case of special damage. If it were necessary to decide the question we would incline to repudiate this qualification as so broadly stated. The oral dissemination of private matter may be as rapid as the wagging tongue of gossip and as devastating as the printed page; and, to confine the question to the facts in hand, what logical distinction can be found between writing a letter to the Prator family telling them that plaintiff owes defendant a bill and is a deadbeat and summoning her to the telephone before the same family where her spontaneous replies to statements of defendant over the telephone will naturally disclose to the Prator family that she is being dunned for a bill after being summoned from her home at a late hour of the night? It would seem under these circumstances that the oral communication would be more damaging than the written one.

However since the complaint states a cause of action on the theory first discussed the decision of the other question becomes unnecessary.

Judgment reversed with directions to the trial court to overrule the demurrer.

Nourse, P. J., and Goodell, J., concurred.